# FIN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

ASAAD AMIR HASUAN,

        Plaintiff,

      v.

SGT. ERIC WATSON; MAJOR FNU
MASTROIANNI; and SHERIFF JAMES K.
PROCTOR,

        Defendants.

CIVIL ACTION NO.: 2:20-cv-121

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Eric Watson, FNU Mastroianni, and James K. Proctor's Motion to Dismiss.  Doc. 55.  Plaintiff filed a Response.  Doc. 63.  Defendants filed a Reply.  Doc. 65.  For the following reasons, I **RECOMMEND** the Court **DENY** Defendants' Motion to Dismiss.  Doc. 55.

## BACKGROUND

Plaintiff, proceeding pro se, brought this suit, asserting claims under 42 U.S.C. § 1983 for alleged violations of his constitutional rights.  Doc. 1; Doc. 48.  Defendant removed the case from the Superior Court of Glynn County to this Court.  Doc. 1.  Plaintiff then twice amended his Complaint.  Docs. 20, 47.  Plaintiff's Second Amended Complaint is now the operative Complaint.  Doc. 48.

Plaintiff alleges while he was held at Camden County Jail as a pretrial detainee, Defendants Watson and Mastroianni refused to provide Plaintiff with written notices of disciplinary charges against him prior to his disciplinary hearing.  Id. at 1–2.  Plaintiff was found

guilty of these disciplinary charges and was placed in administrative segregation with no privileges and forced to eat pinto and lima beans three times a day as punishment.  Id. at 2. Plaintiff states he did not receive a written notice of the charges against him until after the disciplinary hearing.  Id. at 3.  Plaintiff further alleges Defendants Mastroianni and Proctor failed to train staff at the Camden County Jail on the disciplinary procedure rules and policies and Defendant Proctor maintained a policy of not providing inmates with written notices of the disciplinary charges against them.  Plaintiff asserts Defendants Mastroianni and Proctor's failure to provide written notice of disciplinary reports to Plaintiff before his disciplinary hearings violated his Fourteenth and Eighth Amendment rights.  Id. at 5.

Plaintiff also complains that between March 5, 2020 and May 26, 2020, he was held in administrative segregation by Defendants Watson, Mastroianni, and Proctor.  Id. at 4.  Plaintiff alleges he never received an explanation as to why he was placed in administrative segregation and never received a review regarding his placement.  Id.  As a result of being in administrative segregation, Plaintiff states he was forced to pay lockdown fees, deprived of all his personal property, unable to appeal his placement in segregation, and denied access to the law library.  Id. Plaintiff contends Defendants' failure to provide review of his placement in segregation violated his Eighth and Fourteenth Amendment rights.  Id. at 6.

Additionally, Plaintiff asserts his Eighth Amendment rights were violated by Defendants who forced him to eat "food loaf" while in segregation.  Finally, Plaintiff brings a claim against Defendants Watson and Mastroianni for denying Plaintiff the right to access the court while he was in administrative segregation.  Id. at 7.

**DISCUSSION**

Defendants argue Plaintiff's claims should be dismissed because Plaintiff failed to exhaust his available administrative remedies. Doc. 55. For the following reasons, I find Defendants have not demonstrated Plaintiff failed to exhaust available administrative remedies before filing this suit, and, therefore, I **RECOMMEND** the Court **DENY** Defendants' Motion to Dismiss. Doc. 55.

**I.  Exhaustion**

**A.  PLRA's Exhaustion Requirements**

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). A plaintiff's subjective belief

that administrative remedies are inadequate or futile will not excuse the exhaustion requirement. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim.  Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules.  Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))).  "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)).  An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit.  Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

The procedural steps prisoners must follow to fully exhaust are set out by their prison's administrative grievance policies.  Jones, 549 U.S. at 218; Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 202 (11th Cir. 2018) ("To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures

established by the prison.").  Prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process.  Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

**B.     Camden County Jail's Grievance Procedures**

**1.     *General grievance policies.***

Camden County Jail's general grievance policies are set out in Policy 5-21, the "Grievance System," which was in effect during the relevant time, namely from March 2020 to May 2020.  Doc. 55-1 at 1–2; Doc. 55-2.  Inmates may grieve issues associated with incarceration by following Policy 5-21.  Doc. 55-2.  Policy 5-21 allows an inmate to grieve any issue, except areas specifically excluded by the Policy, such as disciplinary actions.  For grievable issues, when an inmate complains, correctional officers first try to resolve the issue informally.  Id. at 1.  If the inmate's complaint is not resolved informally, he may file a written grievance using an Inmate Grievance Form within five days of the incident or when the inmate reasonably should have discovered the incident.  Id.  Inmate Grievance Forms are available to inmates upon request from a correctional officer.  Id.

After filing a properly completed Inmate Grievance Form, the Grievance Coordinator will provide a written response to the inmate within five days if it is an emergency grievance or 10 days for all other grievances, excluding weekends or holidays.  Id. at 1–2.  If the inmate is not

satisfied with the Grievance Coordinator's response and findings, the inmate may submit a formal grievance to the Assistant Jail Administrator (or his designee), who will investigate further.  Id. at 2.  The Assistant Jail Administrator (or his designee) will provide a written response to the inmate within 15 days of the complaint.  Id.  After the inmate receives the response, the inmate has three days to accept the findings and actions taken or appeal to the Facility Administrator.  Id.

If an inmate wishes to appeal the Assistant Jail Administrator's findings and response to the Facility Administrator, he must provide written reasons on the grievance form and return it to the Assistant Jail Administrator or his designee within that three-day period.  Id.  The Assistant Jail Administrator will forward the grievance form with the appeal to the Facility Administrator for review within 10 days.  Id.  After an inmate has exhausted the Facility Administrator appeal, he has exhausted all administrative remedies offered.  Id.

### 2. Grievance Policy for disciplinary actions.

Camden County Jail's Policy on disciplinary hearings provides a separate mechanism to appeal a hearing officer's disciplinary decision.  Doc. 65-2; see Doc. 55-2 at 1 (explaining disciplinary proceedings have a separate grievance and appeals process).  An inmate must appeal a hearing decision in writing within two business days of the hearing.  Doc. 65-2 at 1.  Once an inmate appeals the decision, the Jail Administrator will review the hearing report.  Id.  The decision of the Jail Administrator on an appeal is final.  Id.

### C. Standard of Review for Exhaustion

Defendants may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at

1209.  When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to

exhaust his administrative remedies."  Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside,

541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F.

App'x 748, 752 (11th Cir. 2018); White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017);

Dimanche, 783 F.3d at 121; Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, a prisoner "need exhaust

only 'available' administrative remedies."  Ross, 136 S. Ct. at 1858 ("The PLRA contains its

own, textual exception to mandatory exhaustion."); Pavao v. Sims, 679 F. App'x 819, 823 (11th

Cir. 2017).  Drawing from the plain language of the word "available," the United States Supreme

Court has concluded that "an inmate is required to exhaust . . . only those[] grievance procedures

that are 'capable of use' to 'obtain some relief for the action complained of.'"  Ross, 136 S. Ct. at

1858–59; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County 510 F.3d 1312, 1322–23

(11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be

'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")).

"Remedies that rational inmates cannot be expected to use are not capable of accomplishing their

purposes and so are not available."  Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy,

although officially on the books, is not capable of use to obtain relief."  Ross, 136 S. Ct. at 1859.

First, "an administrative procedure is unavailable when (despite what regulations or guidance

materials may promise) it operates as a simple dead end—with officers unable or consistently

unwilling to provide any relief to aggrieved inmates."  Id.; Turner, 541 F.3d at 1083 (noting the

PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . .

they will refuse to abide by the established ones").  Second, exhaustion is not required when an

administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859–60. Third, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero, 2018 WL 3861351, at *1. This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to

resolve the disputed factual issues related to exhaustion."  Turner, 541 F.3d at 1082; see also

Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is]

permitted to make factual findings to resolve the issue of exhaustion.").  After resolving the

factual disputes, the court then decides whether, "based on those findings, defendants have

shown a failure to exhaust."  Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at

1209).  Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative

remedies, the court may consider evidence outside the pleadings."  Berger, 709 F. App'x at 541

n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of

Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court

may properly consider facts outside of the pleadings to resolve a factual dispute regarding

exhaustion where the factual dispute does not decide the merits and the parties have a sufficient

opportunity to develop the record.").

## II.    Applying **Turner**

Plaintiff's Second Amended Complaint implicates two types of claims.  First, Plaintiff

asserts claims regarding his conditions of confinement, including claims about the food he was

served at Camden County Jail and his ability to access the law library and the courts.

Additionally, Plaintiff brings a claim regarding the disciplinary process at Camden County Jail,

implicating his procedural due process rights.  These claims also involve different grievance

procedures at Camden County Jail.

### A.    Exhaustion of Plaintiff's Administrative Remedies on His Conditions of Confinement Claims

Defendants argue Plaintiff failed to exhaust his available administrative remedies before

filing suit regarding his conditions of confinement claims.  Doc. 55 at 3.  While Defendants

acknowledge Plaintiff initiated the grievance process, they argue Plaintiff failed to appeal the

denial of his grievances.  Id. at 6; Doc. 55-3.  Indeed, there are no records of Plaintiff appealing any of the grievances he filed in April or May of 2020.  Doc. 55-2 at 4–5.  In his Response to Defendants' Motion, Plaintiff admits he failed to appeal his grievances but argues any failure to exhaust should be excused because there are no grievance appeal forms available at Camden County Jail and inmates are not made aware of the jail's grievance appeal process.  Doc. 63 at 3, 5–6.

### 1. *Plaintiff's claim survives under Turner step one.*

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true."  Turner, 541 F.3d at 1080–82.  Plaintiff's allegations and Defendants' allegations plainly conflict.

Plaintiff alleges he did not appeal his grievance because grievance appeal forms were not provided at Camden County Jail and inmates are not informed of the grievance appeal process.  Doc. 63 at 3–6.  On the other hand, Defendants contend Plaintiff was aware of the grievance appeals policy and voluntarily forewent it to file suit.  Doc. 65.  Looking solely at Plaintiff's Response, his allegations are enough to survive a motion to dismiss for failure to exhaust his administrative remedies under the first prong of the Turner test.  Plaintiff contends the appeals procedure was unavailable to him; thus, exhaustion was not required.

### 2. *Plaintiff's claims survive under Turner step two.*

The parties' filings implicate a factual dispute as to whether Plaintiff had access to appeal forms and was informed of the grievance appeal procedure.  "[F]actual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts." Womack v. Sikes, No. CV 307-042, 2008 WL 4104148, at *5 (S.D. Ga. Sept. 4, 2008).

Nevertheless, a district judge may act as a factfinder in resolving whether an inmate has exhausted his non-judicial remedies.  Bryant, 530 F.3d at 1374 (citing Wyatt v. Terhune, 315 F.3d 1108, 1119–20 (9th Cir. 2003)).  Similarly, the Supreme Court has explained "discredited testimony" cannot be relied upon to resist summary judgment.  See Womack, 2008 WL 4104148 at *5 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)).

This analysis begins with the burden.  Failure to exhaust is an affirmative defense which, like other affirmative defenses, puts the burden of proof squarely on defendants.  See Presley v. Scott, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff."); Berger, 709 F. App'x at 542 (finding "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); Whatley I, 802 F.3d at 1209; Turner, 541 F.3d at 1082–83; see also Abram, 759 F. App'x at 861 (remanding to determine whether administrative remedies were available to plaintiff where plaintiff alleged prison staff refused to provide grievance forms and plaintiff provided an affidavit from another inmate who witnessed plaintiff's request for forms and subsequent denial).  Even when a plaintiff relies only "upon his own self-serving allegations," courts should "consider[] whether a 'reasonable juror would undertake the suspension of disbelief necessary to credit the allegations.'"  Womack, 2008 WL 4104148, at *6 (quoting Jeffreys v. City of New York, 426 F.3d 549, 555(2d Cir 2005)).

Before a court resolves disputed factual issues in a motion to dismiss, the court must ensure "the parties ha[d] sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376 & n.14; see also Glenn, 706 F. App'x at 564 ("[I]f there are disputed factual issues, the court must allow the parties to develop the record . . . ."); Porter v. Sightler, 457 F. App'x 880, 882 (11th

Cir. 2012); <u>Singleton</u>, 323 F. App'x at 785 (finding plaintiff-inmate had sufficient opportunity to develop the record when plaintiff filed "numerous pleadings, affidavits, and exhibits regarding the exhaustion issue").  Here, both parties have submitted argument or evidence on the issue of exhaustion.

> (a)    *Defendants have not demonstrated that inmates, including Plaintiff, were provided with a copy of the grievance appeals procedure.*

As to the factual dispute about whether the grievance appeals procedure was provided to inmates, Defendants have failed to meet their burden to show Plaintiff was informed about the procedure.  Plaintiff argues his failure to exhaust should be excused because inmates at Camden County Jail, including himself, are not informed of the jail's appeal procedures.  Doc. 63 at 5–6.  Plaintiff filed a declaration supporting his Response, in which he also states he was never permitted to review the jail's policies regarding grievances and was not informed of the appeals process.  Doc. 62 at 1.

In their Reply, Defendants provided a Declaration from Robert Mastroianni, the Jail Administrator for Camden County Jail.  Doc. 65-1.  In the declaration, Mr. Mastroianni states all inmates are provided with an Inmate Handbook and that Plaintiff was provided access to and reviewed the Inmate Handbook on March 3, 2020.  Doc. 65-1; Doc. 65-3 at 2.  Defendants also provided an excerpt from the Inmate Handbook.

The Handbook excerpt provided by Defendants only addresses the grievance procedure for disciplinary actions.  That is, the portion of the Handbook provided does not demonstrate inmates, including Plaintiff, are informed about the appeal procedures for non-disciplinary grievances.  While Defendants have established Plaintiff was provided access to the Inmate Handbook, they have failed to establish the relevant information—information on how to appeal denied conditions-of-confinement grievances—was contained in the Handbook provided to

Plaintiff.  The Policy itself lays out appeal procedures, but Defendants have not shown Plaintiff

or other prisoners actually received the Policy.  Thus, Defendants have not shown Plaintiff was

informed about the process for appealing conditions-of-confinement grievances.  Moreover,

Plaintiff's Declaration supports his claim that he was not informed about the grievance appeals

process.  As explained above, it is Defendants burden to prove Plaintiff failed to exhaust.  On

this record, Defendants have failed to carry their burden.

> (b)    *Whether failure to provide information on how to appeal a
> grievance renders the administrative remedies unavailable.*

In Ross v. Blake, the Supreme Court outlined three situations where an administrative

procedure is unavailable: (1) when it operates as a simple dead end—with officers unable or

consistently unwilling to provide any relief to aggrieved inmates; (2) when an administrative

scheme is so opaque it becomes incapable of use; and (3) when prison administrators thwart

inmates from taking advantage of a grievance process through machination, misrepresentation,

or intimidation.  136 S. Ct. 1850, 1859–60 (2016).  Prior to Ross v. Blake, the Eleventh Circuit

Court of Appeals held an administrative remedy is not available "if 'an inmate does not know

about, and cannot discover through reasonable effort . . . remedies or requirements for remedies

. . . by the time they are needed."  Williams v. Marshall, 319 F. App'x 764, 768 (11th Cir. 2008)

(quoting Goebert v. Lee County, 510 F.3d 1312, 1322 (11th Cir. 2007)).  Put another way, an

administrative remedy which is "unknown and unknowable is unavailable; it is not 'capable of

use for the accomplishment of a purpose."  Goebert, 510 F.3d at 1323 (quoting Booth v.

Churner, 532 U.S. 731, 738 (2001)).  In Williams, there was a handbook that referred to a

"Policy Directive E–401" which was not included in the handbook, and the grievance form itself

said nothing about whether the inmate could or should appeal the result.  319 F. App'x at 767–

68.

While Ross does not expressly address whether a remedy is unavailable because inmates are not made aware of the grievance procedure, the reasoning behind Ross squarely extends to such a situation.  Indeed, it would be hard to imagine a grievance procedure more opaque than one totally unknown to a prisoner.  Ross, 136 S. Ct. at 1859–60.  The Eleventh Circuit's decision in Forde v. Miami Federal Department of Corrections, 730 F. App'x 794, 800 (2018), underscores the viability of pre-Ross cases finding administrative remedies unavailable where the plaintiff is not made aware of the policy.

In Forde, the Eleventh Circuit noted a remedy may be unavailable where the process for prisoners to appeal was not provided to inmates.  Id. (remanding to the district court for further factual development on the issue) (citing Goebert, 520 F.3d at 1322–24); see also Trevari, 729 F. App'x at 753 ("Where the grievance procedures provide no instruction on how to handle unreturned grievances, a prisoner should not be faulted for failing to use the prison's preferred method to appeal a claim.").  Thus, a grievance process is unavailable where necessary information is not provided to prisoners or the information which is provided is ambiguous as to what is required.  See Nicholson v. Harrison, No. 5:18-cv-1128, 2021 WL 3928835, at *13 (N.D. Ala. June 14, 2021) (explaining an administrative remedy would be unavailable if the inmate was not provided with information on how to exhaust his grievance); Parmeley v. McCall, No. 216CV01534, 2019 WL 2499621, at *4 (N.D. Ala. Apr. 10, 2019), *report and recommendation adopted*, 2019 WL 2491710 (N.D. Ala. June 14, 2019) ("To the extent the Hoover City Jail grievance procedure . . . was unavailable to the plaintiff, he need not have exhausted that procedure before bringing this action."); Burkett v. Marshall, CV 107–080, 2009 WL 454133, at *6 (S.D. Ga. Feb. 23, 2009) (finding exhaustion was unclear where inmate failed to appeal because inmate handbook referred to "Policy Number: E–401," which was not contained in the

handbook and which prison officials did not say was provided to inmates at all); Campbell v. Johnson, 3:05CV113, 2008 WL 222691, at *7 (N.D. Fla. Jan. 25, 2008) (holding appeal not required to exhaust where steps in grievance process were described in optional terms, no handbook or written guidelines were provided to inmates, and there was no evidence that jail officials told inmates they had to appeal).

Here, as explained, Defendants have failed to establish Plaintiff had any access to the Policy that explained his duty to appeal the grievances or that he was informed about how to appeal grievances.  Therefore, Defendants have not met their burden of showing the administrative remedies were available to Plaintiff.  Wright v. Georgia Dep't of Corr., 820 F. App'x 841, 845 (11th Cir. 2020) ("Turner mandates that 'defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies,' which includes showing that a remedy is generally available.") (citing Turner, 541 F.3d at 1082.).  Plaintiff is not required to exhaust unavailable administrative remedies grievance—in this case appealing his grievance—prior to filing suit.  Nicholson, 2021 WL 3928835, at *13; Steele v. Gilmore, No. CV 16-0456, 2017 WL 3529956, at *5 (S.D. Ala. July 12, 2017), *report and recommendation adopted*, 2017 WL 3527399 (S.D. Ala. Aug. 16, 2017); Dunn v. Dunn, 219 F. Supp. 3d 1100, 1115–17 (M.D. Ala. 2016).  Therefore, I **RECOMMEND** the Court **DENY** Defendants' Motion to Dismiss for failure to exhaust administrative remedies related to Plaintiff's conditions-of-confinement claim.[1]

---

[1]     Because I conclude Defendants have not demonstrated Plaintiff was informed about the grievance appeal procedures, I decline to address Plaintiff's additional contention that appeal forms were not provided to inmates.

### B.      Exhaustion of Plaintiff's Administrative Remedies Related to His Due Process Claims

Plaintiff alleges his due process rights were violated because Defendants did not inform him of the disciplinary charges against him prior to his disciplinary hearing.  Doc. 63 at 2; Doc. 48.  Defendants argue Plaintiff failed to exhaust available administrative remedies related to his due process claims, which are governed by a separate administrative process that Plaintiff failed to utilize.  Doc. 65 at 2.  However, Plaintiff contends he did exhaust and was not informed of any particular appeal procedures.  Instead, according to Plaintiff, he was required to appeal in writing, which he did.[2]

As explained above, the Camden County Jail Policy requires an inmate to appeal any disciplinary decision, in writing, within two business days.  Doc. 65-2.  Unlike the conditions-of-confinement claims, it is undisputed Plaintiff was informed about the appeal procedures for disciplinary decisions.  Rather, Defendants assert Plaintiff failed to file an appeal to the Jail Administrator relating to his disciplinary actions.  Doc. 65 at 2.  However, the record shows Plaintiff filed written grievances during the relevant time period while at Camden County Jail— Grievance Number 2020-1104, dated May 9, 2020, and an Inmate Request, dated April 6, 2020—which concern Plaintiff's disciplinary hearing decisions and his claim he did not receive the disciplinary charges against him prior to his disciplinary hearing.  Docs. 55 at 3, 55-3 at 4–7; Docs. 63-2, 63-4.  Plaintiff also submitted an "Inmate Request," dated May 9, 2020, where he complains of the same issues related to his disciplinary hearing.  Doc. 63-4.  Thus, Plaintiff did,

---

[2]      The use of the term "appeal" regarding conditions-of-confinement grievances, on one hand, and disciplinary decisions, on the other, may cause some confusion.  To clarify, for conditions-of-confinement complaints, the "appeal" is an appeal of the initial disposition of the grievance.  For complaints about disciplinary proceedings, the "appeal" is an appeal of the initial disciplinary decision; no grievance is involved in the disciplinary review process.

in fact, file *something* in writing about the disciplinary decisions and directed the writing to jail officials.

Defendants do not explain why the above-referenced writings do not satisfy the appeal in writing requirement as set forth in the Jail Policy.  Defendants offer no explanation as to why Plaintiff's May 9, 2020 grievance and April 6, 2020 and May 9, 2020 Inmate Requests do not satisfy the writing requirement.  From the information provided to the Court, it appears Plaintiff satisfied the writing requirement, as set out in the Inmate Handbook—that is, he appealed his disciplinary decisions in writing.  While it may be Plaintiff's writings did not satisfy some requirement, Defendants have failed to identify the specific requirements and have not addressed the writings Plaintiff provided to the Court.  Defendants have not shown Plaintiff failed to exhaust available administrative remedies for his procedural due process claims, and, therefore, I **RECOMMEND** the Court **DENY** the portion of Defendants' Motion to Dismiss related to Plaintiff's due process claims.

In sum, I **RECOMMEND** the Court **DENY** Defendants' Motion to Dismiss because Defendants have failed to show administrative remedies were available for Plaintiff's conditions of confinement claim and have failed to show Plaintiff did not exhaust his administrative remedies as it relates to his procedural due process claim.

## CONCLUSION

Based on the foregoing reasons, I **RECOMMEND** the Court **DENY** Defendants' Motions to Dismiss.  Doc. 55.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing

must be included.  Failure to file timely, written objections will bar any later challenge or review

of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C);

Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be

clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal

conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–

93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United

States District Judge will make a de novo determination of those portions of the report, proposed

findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not

meeting the specificity requirement set out above will not be considered by a District Judge.  A

party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 20th day of December, 2021.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA